UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DARRELL J. WOODS, SR.,           )
                                 )
            Plaintiff,           )
                                 )
      v.                         )        No. 1:23-cv-00021-SRW
                                 )
HEATHER ANNESSER, et al.,        )
                                 )
            Defendants.          )

<u>**OPINION, MEMORANDUM AND ORDER**</u>

This matter comes before the Court on the motion of plaintiff Darrell J. Woods, Sr. for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $4.33. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. (Docket No. 4). The certified inmate account statement shows an average monthly deposit of $21.64. The Court will therefore assess an initial partial filing fee of $4.83, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the following eight defendants: (1) Nurse Heather Annesser; (2) Nurse Rosanna Williams; (3) Health Service Administrator Molly Leija; (4) Director of Nursing Roxan Anderson; (5) Ashlee Ratliff; (6) Nurse Practitioner Ragina Hills; (7) Caseworker Tracy Davis; and (8) Nurse C. Gammons. (Docket No. 1 at 2-4). Defendants are sued in both their official and individual capacities. (Docket No. 1 at 6). The complaint contains claims regarding deliberate indifference to medical needs under the Eighth Amendment, retaliation in violation of the First Amendment, failure to protect under the Eighth Amendment, conspiracy claims under 42 U.S.C. § 1983 an § 1985, and state law claims of harassment and intentional infliction of negligence. (Docket No. 1 at 5).

In the "Facts" section of the complaint, plaintiff asserts that Nurse Annesser and Nurse Williams "denied and/or unreasonably delayed" his health service requests (HSR) "for the purpose

of causing [him] unnecessary and wanton" pain, and delayed medical treatment for his hernia. (Docket No. 1 at 6). By way of explanation, he states that between May 20 and June 29, 2022, he submitted several different HSRs for a hernia causing him pain. According to plaintiff, these HSRs "should have been classified routine referrals," requiring the nursing staff to see him "during the next available sick call, or within five business days of the request." (Docket No. 1 at 6). During this timeframe, however, plaintiff claims that Nurse Annesser and Nurse Williams "either failed to triage" plaintiff's HSRs "and/or failed to direct prison guards to bring plaintiff to the health care unit…for evaluation and treatment." (Docket No. 1 at 6-7). Plaintiff notes that "[d]uring the off days of" Nurse Annesser and Nurse Williams, "several other nurses gathered" his HSRs and also "failed to triage them, and or failed to direct prison guards to bring plaintiff to the health care unit for evaluation and treatment." (Docket No. 1 at 7).

Plaintiff notes that HSRs are "written petitions for health assistance" for medical, dental, and mental health issues. (Docket No. 1 at 8). He states that Missouri Department of Corrections Policy regarding non-emergency health services provides that each HSR "shall be triaged by a licensed health service staff member within 24 hours." Plaintiff further explains that HSRs must be assessed for the existence of a medical emergency, "and the need for an offender to be brought to the health care unit for assessment." He contends that for routine referrals, the offender must be seen at the next available sick call, or within five business days of the request. Meanwhile, emergency referrals require the offender to be seen immediately. At no point does plaintiff disclose the contents of the HSRs he purportedly submitted.

In addition to the deliberate indifference claim against Nurses Annesser and Williams, plaintiff accuses them of retaliation. (Docket No. 1 at 9). He repeats his earlier assertion that between May 20, 2022 and July 20, 2022, he "submitted several different H.S.R.s for complaints

4

of a hernia that was causing him pain." Plaintiff insists that these HSRs "should have been classified [as] routine referrals," and that he should have been seen at the next available sick call or within five business days. He alleges that Nurse Annesser and Nurse Williams failed to triage his HSRs "and or completely failed to direct prison guards to bring [him] to the health care unit for assessment." (Docket No. 1 at 9-10). Plaintiff contends that this failure resulted from his filing of grievances. (Docket No. 1 at 10). In particular, he asserts that he filed an informal resolution request (IRR) against Nurse Annesser, complaining that Annesser had delayed "medical treatment for his chronic leg pain from his previous gunshot wound." Nurse Williams purportedly addressed that IRR "inappropriately." Plaintiff notes that he has sued both Nurse Annesser and Nurse Williams in a separate lawsuit.

With regard to Health Service Administrator Leija and Director of Nursing Anderson, plaintiff asserts that they "tolerated and/or encouraged" the retaliatory actions and deliberate indifference of Nurse Annesser and Nurse Williams. (Docket No. 1 at 11). He states that Leija "is a contracted professional" and is the "top supervisor" of nursing staff at SECC. Plaintiff asserts that by "reading [his] grievance," Leija "learned that" Nurses Annesser and Williams "delayed" his HSRs, which caused a delay in treatment for his hernia. Despite reading his grievance, Leija allegedly "failed to afford plaintiff an appropriate remedy to his grievance."

Similarly, plaintiff asserts that Director Anderson "is a contracted professional who serves as the responsible director of nursing services for an assigned facility or region," and oversees "all nursing operations for the offender population. (Docket No. 1 at 12). As such, Anderson must ensure that the "nursing services provided comply with applicable federal, state, and local law," as well as "department contract requirements and National Commission on Correctional Health Care standards." By reading plaintiff's IRR, plaintiff contends that Anderson learned that

defendants Annesser and Williams delayed his HSRs, causing a delay in treatment for his hernia. Plaintiff also states that Anderson "failed to afford" him "an appropriate remedy to his I.R.R.," and that she "failed to even respond."

Concerning defendants Ratliff and Hill, plaintiff argues that they "tolerated and/or encouraged retaliatory action and deliberate indifference" by Nurse Annesser and Nurse Williams. (Docket No. 1 at 13). Plaintiff notes that Ratliff and Hill are not supervisors, and "do not have the authority to correct nurses who violate federal, state, and local laws." Nonetheless, he accuses Ratliff and Hill of investigating and responding to his grievance, and therefore "accepted the responsibility to correct the violations of" Nurse Annesser and Nurse Williams. However, plaintiff insists that they failed to make such corrections. He states that Ratliff and Hill "acknowledged" his complaint regarding the delayed HSRs, which purportedly delayed his treatment for a hernia, yet "failed to admit or deny [his] complaint."

Plaintiff also alleges that Health Service Administrator Leija and Nurse Practitioner Hill engaged in a conspiracy under 42 U.S.C. § 1985 "to impede, hinder, obstruct, and/or defeat the due course of justice for the purpose of denying [him] the equal protection of the laws." (Docket No. 1 at 14). In particular, plaintiff states that Ashlee Ratliff and Nurse Practitioner Hill "investigated and responded to the grievance" he submitted. He claims, however, that nobody knows "an Ashlee Ratliff[,] which gives [him] reason to believe that Molly Leija used an alias name ('Ashlee Ratliff') in responding to [his] grievance." Plaintiff thus alleges that "Ashlee Ratliff is not a real person," and that "if this is the case, Molly Leija used an alias name to hinder, obstruct, and/or defeat the due course of justice by hindering [him] from testifying freely, fully, and truthfully to the matters pending herein." He further notes that identifying the "defendants is a very important part of filing a lawsuit."

With regard to Caseworker Davis, plaintiff accuses her of conspiring to "trick" him into abandoning his grievance appeal. (Docket No. 1 at 15). He states that Davis misled him into believing that Davis "provided [him] with an official grievance appeal." On October 10, 2022, plaintiff sent Davis a letter which he titled "judicial notification." In the letter, plaintiff wrote that the response to his grievance had exceeded the timeframe, but Caseworker Richard Trout had "completely failed to satisfy [his] repeated requests for a blank grievance appeal…to move forward in the grievance procedure." He also apparently threatened Davis with a lawsuit unless Davis provided him with a blank grievance appeal within ten days.

On October 17, 2022, Davis responded to plaintiff by advising him that she would send an appeal form to plaintiff's caseworker. (Docket No. 1 at 16). Davis also added that only the grievance officer – and not housing unit staff – were supposed to hand out appeal forms. On October 19, 2022, Caseworker Trout "gave plaintiff a blank grievance appeal form…to indicate that he received it from Tracy Davis." According to plaintiff, this showed that Davis "marked the response to [his] grievance…as [exceeding] the time frame, which was designed to mislead plaintiff to believe that the October 19, 2022 grievance appeal…was genuine."

On October 26, 2022, Caseworker Trout gave plaintiff a grievance response dated October 4, 2022. Plaintiff believes this contradicted Caseworker Davis's "October 17, 2022 response to plaintiff's judicial notification, indicating that she marked the response to [his] grievance…as [exceeding] the time frame, and was sending plaintiff['s] case-manager an appeal form to give to plaintiff." He asserts that Davis clearly misled him "to believe that the grievance appeal form provided on October 19, 2022 was genuine for the purpose of causing [him] to ignore the blank grievance appeal…that was provided on October 26, 2022." (Docket No. 1 at 16-17). Plaintiff

insists that the grievance appeal form provided on October 26, 2022 was genuine, while the appeal form provided on October 19, 2022 was not. (Docket No. 1 at 17).

As to Nurse Gammons, plaintiff alleges that Gammons conspired against him "for the purpose of impeding, hindering, obstructing, and/or defeating the due course of justice with intent to deny plaintiff the equal protection of the laws." In particular, he asserts that "Gammons unreasonably denied [his] repeated request[s] to review his medical records." Plaintiff argues that Gammons did this with the intent to hinder him from obtaining relevant information in filing the instant 42 U.S.C. § 1983 action. He also suggests that in a prior federal case,[1] defendants – along with nurses acting in concert with them – "falsified plaintiff's medical records for the purpose of creating sham issues of fact in an effort to defeat plaintiff on summary judgment."

Plaintiff purports to bring state law harassment and "intentional infliction of negligence" claims against Nurse Practitioner Hill. (Docket No. 1 at 18). He states that on November 3, 2022, he received surgery for his hernia. After the surgery, he "was prescribed ibuprofen for pain." On November 10, 2022, Hill had plaintiff brought to the health care unit to "assess the progress of [his] healing." At this time, plaintiff complained he was still in pain, but Hill "discontinued plaintiff's ibuprofen." He alleges Hill did this "for the purpose of retaliation and harassment." Despite this accusation, plaintiff acknowledges that on January 20, 2023, Hill "prescribed plaintiff some medication as treatment for acid for his surgery that he received on November 3, 2022." Plaintiff adds that Hill "admitted that there was not an Ashlee Ratliff employed at SECC," and that this supports his "theory that Molly Leija used an alias name."

In a section of the complaint titled "Imminent Danger," plaintiff refers to "chronic leg pain from his previous gunshot wound." (Docket No. 1 at 20). Due to this wound, he was brought to

---

[1] Plaintiff appears to be referring to *Woods v. Chada, et al.*, No. 6:19-cv-3151-BP (W.D. Mo.) (dismissed on summary judgment on May 4, 2020).

nurse sick call and doctor sick call. Plaintiff asserts that non-emergent referrals should be seen within fourteen calendar days. However, he states that during a seventy-one day period, Nurse Practitioner Hill "completely failed to direct prison guards to bring plaintiff to [doctor sick call] for evaluation and treatment concerning his chronic leg pain."

In a section of the complaint titled "Memorandum of Law," plaintiff provides support for his request for injunctive relief regarding both a transfer and medical treatment. (Docket No. 1 at 30). He first argues that he is threatened with irreparable harm, pointing to the previously-mentioned failure to triage his HSRs, and the failure to bring him to the health care unit "for evaluation and treatment." Plaintiff further asserts that defendants discontinued his pain medications because of his grievances.

Second, plaintiff contends that he would be "highly prejudiced" if an injunction were not issued, because he would be kept at an overcrowded facility "where nursing staff have a built-in bias." (Docket No. 1 at 31).

Third, plaintiff states that he has a likelihood of success on the merits because his medical records, grievances, and "other documentary evidence that could be obtained during discovery" prove his claims.

Finally, plaintiff asserts that his request for injunctive relief serves the public interest because he has complied with the requirements of the Federal Rules of Civil Procedure, and is making a good faith effort to correct constitutional violations. (Docket No. 1 at 32).

In the "Injuries" section of the complaint, plaintiff notes that he sustained a hernia that required pain medication and surgery. (Docket No. 1 at 21). Though he received surgery, he claims that defendants unreasonably delayed his medical treatment. Based on these injuries, plaintiff

"seeks transfer as an injunction," due to "built-in bias." (Docket No. 1 at 22). Plaintiff also requests compensatory and punitive damages in the amount of $25,000 per defendant.

Attached to the complaint are a total of eleven exhibits, which the Court has reviewed and will treat as part of the pleadings.[2]

Nine of the exhibits are copies of plaintiff's health service requests. The first is dated February 17, 2021, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 33). In response, healthcare staff asked: "Can you please explain further[,] you have no active meds?"

The second health service request is dated May 6, 2021, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 34). In response, Nurse Williams has replied: "Only active meds are Tylenol."

The third health service request is dated August 22, 2021, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 35). In response, healthcare staff asked: "What questions do you have?"

The fourth health service request is dated August 29, 2021, and in the complaint section, plaintiff has written: "Medication problem/question." (Docket No. 1 at 36). In response, healthcare staff notified plaintiff that he had made "no complaint," and asks him to "please resubmit with complaint."

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

The fifth health service request is dated September 1, 2021, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 37). In response, healthcare staff noted: "You are not prescribed any medications."

The sixth health service request is dated January 24, 2022, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 38). In response, healthcare staff notified plaintiff that: "No medical complaint listed. Please fill out [and] resend."

The seventh health service request is dated March 29, 2022, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 39). In response, healthcare staff advised him to: "Please submit signs [and] symptoms."

The eighth health service request is dated May 2, 2022, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 40). In response, healthcare staff directed him to: "Please submit with your complaint listed."

The ninth health service request is dated May 11, 2022, and in the complaint section, plaintiff has written: "Medication problem/questions." (Docket No. 1 at 41). In response, healthcare staff returned the HSR to plaintiff asking: "What medication?"

The tenth exhibit is an "Offender Communication" from Centurion. (Docket No. 1 at 42). The communication has been written by defendant Gammons and directed to plaintiff. The substance of the communication is that Gammons has received plaintiff's request to review his records. Gammons advises that Centurion does not allow inmates to review their records. However, plaintiff is told that he can submit an HSR that requests exactly what he wants, and that Centurion will then pull that record and inform plaintiff of the cost. Plaintiff is further advised that the records will be released upon payment, and that he can only make one request a year.

11

The last exhibit is a letter from plaintiff to "Jane/John Doe Grievance Officer." (Docket No. 1 at 43). In the letter, plaintiff states that the response to his grievance has been exceeded, and that he has already made two requests for a blank grievance appeal form in order to move forward. However, plaintiff states that Caseworker Trout has "completely failed to satisfy [his] repeated requests for a grievance appeal." He then threatens a lawsuit if his demand for a blank grievance appeal is not met within ten days. At the bottom of the letter, there is a handwritten notation, apparently from Caseworker Davis, in which Davis advises that she will send an appeal form to plaintiff's case manager for the case manager to give to plaintiff. Davis also informs plaintiff that only the grievance officer can hand out appeal forms, not the housing unit staff.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging a variety of claims, including deliberate indifference to his medical needs, failure to protect, and retaliation. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Official Capacity Claims

Plaintiff has sued defendants Annesser, Williams, Leija, Anderson, Ratliff, Hills, Davis, and Gammons in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County");

12

*Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, plaintiff asserts that all defendants are employed by SECC. Given the facts provided in the complaint, though, as well as the attached exhibits, it appears that the healthcare employees are employed by Centurion, while the non-healthcare employees are employed by the Missouri Department of Corrections. As such, in order to state an official capacity claim, plaintiff must demonstrate the liability of Centurion and the State of Missouri, defendants' respective employers. Plaintiff has not done this.

> ### i.    Claim Against Centurion

A corporation acting under color of state law – such as Centurion – can be held liable under 42 U.S.C. § 1983 where a plaintiff is able to "show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

In this case, plaintiff does not even attempt to allege that Centurion harmed him due to a policy, custom, or official action. To be sure, plaintiff indicates that a policy is involved in this case, specifically one requiring that HSRs be triaged and responded to within a certain timeframe. At no point, though, does plaintiff suggest that the policy itself is improper or unconstitutional. Rather, he insists that certain defendants were violating the policy by failing to meet deadlines. However, plaintiff does not attribute these alleged policy violations to Centurion, or otherwise assert that there is a Centurion custom or official action driving them. To the extent that plaintiff seeks to hold Centurion liable for the actions of its employees, the Court notes that respondeat superior is not available. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) ("A corporation acting under color of state law cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to establish that Centurion is responsible for violating his constitutional rights. Therefore, the official capacity claims against the Centurion employees must be dismissed.

### ii.      Missouri Department of Corrections Employees

The official capacity claims against Missouri Department of Corrections employees are treated as being made against the State of Missouri itself. These claims fail for three separate reasons.

#### a.  State is Not a 42 U.S.C. § 1983 "Person" in a Claim for Money Damages

First, to the extent that plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its

14

officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 claim, his claim for money damages against the State of Missouri fails, and his official capacity claim against any state employees must be dismissed.

### b.  Sovereign Immunity Bars Claim for Money Damages

Second, sovereign immunity also protects the State of Missouri from plaintiff's claim for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first

exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason as well, plaintiff's claim for money damages against the State of Missouri fails, and his official capacity claims against any state employees must be dismissed.

### c.   Plaintiff Has Not Demonstrated the State of Missouri's Liability

To the extent that plaintiff seeks prospective injunctive relief, he has not demonstrated the State of Missouri's liability. Such liability may attach to a governmental entity if a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately

indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove the liability of the State of Missouri.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

17

    3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can assert a claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that he was harmed due to a State of Missouri policy, custom, or failure to train.

First, with regard to policy, plaintiff does not suggest that defendants' actions were the result of "a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." In the complaint, he does point to a

18

specific policy regarding the timeframe in which HSRs must be triaged and responded to, but there is no indication that the policy itself is unconstitutional, or that it was likely to result in a constitutional violation. Instead, he alleges that certain defendants violated the policy, thereby denying him his constitutional rights. These facts are directed at the actions of individuals, without demonstrating the liability of the state. Indeed, plaintiff argues that defendants' actions had a retaliatory motive, which further militates against the proposition that the state's policy caused him harm.

Second, as to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" State of Missouri employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. In particular, plaintiff contends that two nurses failed to properly triage his HSRs, and that all other defendants either failed to intervene or conspired to allow it to happen. The problem, though, is that plaintiff never presents any factual support for the proposition that the two nurses actually did anything wrong. Rather than showing a pattern of constitutional violations, plaintiff's facts – such as they are – fail to show even a single violation.

Third, regarding a failure to train, plaintiff is required to show that the State of Missouri acted with deliberate indifference. To show deliberate indifference, he must demonstrate that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." This is typically done by alleging a "pattern of similar constitutional violations by untrained employees." As discussed above, plaintiff has not presented facts regarding a pattern of unconstitutional actions. Indeed, he has failed to present facts supporting even one.

Finally, to the extent that plaintiff seeks to hold the State of Missouri liable as defendants' employer, the Court notes that respondeat superior is not available under 42 U.S.C. § 1983. *See*

*A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a [governmental entity]…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A [governmental entity] may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all of these reasons, plaintiff has not demonstrated the liability of the State of Missouri. Therefore, to the extent that plaintiff seeks prospective injunctive relief, he has failed to state an official capacity claim against any defendants who are state employees.

**B. Individual Capacity Claims**

Plaintiff has also sued defendants Annesser, Williams, Leija, Anderson, Ratliff, Hills, Davis, and Gammons in their individual capacities. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

As discussed below, plaintiff has failed to set forth sufficient facts connecting any of the above-listed defendants with a violation of plaintiff's constitutional rights.

i.      **Deliberate Indifference Claims Against Nurse Annesser and Nurse Williams**

Plaintiff accuses Nurse Annesser and Nurse Williams of deliberate indifference to his medical needs. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). In other words, whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cty.*, 801 F.3d 912, 920 (8th Cir. 2015). Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official actually knew of but disregarded that serious medical need. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

With regard to the objective prong, a "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

As to the subjective prong, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). In other words,

"deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). *See also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health").

Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). *See also Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624 (8th Cir. 2021). However, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff has asserted that he had a hernia that required surgery. This is sufficient to demonstrate a serious medical need. Plaintiff has not, however, presented facts establishing that Nurse Annesser and Nurse Williams knew of and disregarded that need.

The entirety of plaintiff's claim against Nurse Annesser and Nurse Williams rests on his contention that they failed to properly triage his HSRs, and that they did not bring him to sick call within the required timeframe. Nothing in the complaint, though, provides any indication as to the content of the HSRs he sent to Annesser and Williams. That is, he does not support the proposition that the HSRs he submitted contained sufficient information to inform Annesser and Williams that he had a specific medical issue requiring him to be seen, and that they disregarded this issue or delayed his treatment. Plaintiff generally states he had a hernia that caused him pain, but never asserts that he placed this information into his HSRs, or that he informed Nurse Annesser, Nurse Williams, or anyone else of any particular hernia issue that needed attention. In other words, his

22

facts fail to show that his HSRs advised the nurses of a specific medical need, and explained why he needed to be seen, evaluated, and treated.

Plaintiff has attached a total of nine HSRs to the complaint as exhibits. As set forth above, these exhibits to not support his allegations, but rather contradict them. The HSRs that are attached are improperly filled out and do not give notice of any medical need at all. In each of the nine HSRs, plaintiff has written the exact same thing: "Medication problem/questions." None of the HSRs mention plaintiff's hernia, or any other medical issue. Every one of those HSRs has a response from a healthcare staff member, either telling him that he is not prescribed any medications – and thus, unlikely to have medication problems – or advising him that he is filling out the form improperly, and needs to provide an actual complaint. In short, plaintiff's own exhibits establish that plaintiff repeatedly submitted identical HSRs, and apparently ignored staff responses indicating that they did not know what he wanted. If these HSRs are similar to those he sent to Nurse Annesser and Nurse Williams, it appears that any delay in treatment is at least partially attributable to plaintiff failing to advise medical staff what treatment he needed.

It seems that plaintiff is attempting to assert liability in large part due to the alleged failure of Nurse Annesser and Nurse Williams to respond to him within the time period he insists is set forth in Department of Corrections policy. The Court notes that the violation of state law, state regulations, or state-court orders do not, without more, state a claim under 42 U.S.C. § 1983. *See Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations"); and *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this

opportunity to emphasize that violations of state laws, state-agency regulations, and…state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone").

Plaintiff has to do more than simply show he was not seen within the time frame mandated by policy; he must present facts demonstrating that this delay amounted to a constitutional violation. As discussed above, he has not done this. To allege deliberate indifference, plaintiff must present facts that Nurse Annesser and Nurse Williams acted so inappropriately "as to evidence intentional maltreatment or a refusal to provide essential care." This is "a mental state akin to criminal recklessness." There is no indication of such actions on the part of Nurse Annesser and Nurse Williams here. Neither the "Facts" section of the complaint or plaintiff's exhibits provide any mention of the substance of his HSRs, and so plaintiff has failed to allege that Nurse Annesser and Nurse Williams knew of and disregarded a particular serious medical need requiring attention. Certainly, plaintiff makes no effort to connect the HSRs to a delay in the surgery he received, or that Nurse Annesser and Nurse Williams had anything to do with the timing of his surgery.

The Court notes that plaintiff has acknowledged that other, unidentified nurses also allegedly failed to triage his HSRs when Nurse Annesser and Nurse Williams were off duty. This further undercuts the proposition that Annesser and Williams were deliberately indifferent, and instead suggests that plaintiff's HSRs were not describing a medical condition that required triage and evaluation.

For all of these reasons, plaintiff has failed to state individual capacity claims against Nurse Annesser and Nurse Williams for deliberate indifference.

### ii.    Retaliation Claims Against Nurse Annesser and Nurse Williams

Plaintiff accuses Nurse Annesser and Nurse Williams of retaliation in violation of the First Amendment. As a general matter, the First Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013). *See also Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (explaining that First Amendment retaliation claim must include allegations that plaintiff engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, but it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

25

In this case, plaintiff has alleged that he filed a grievance against Nurse Annesser, which Nurse Williams "inappropriately addressed." As a result, he sued both Nurse Annesser and Nurse Williams in July 2021. Plaintiff argues that the delay in triaging or responding to his HSRs is related to that lawsuit.

These allegations fail to establish a claim of retaliation. At the outset, plaintiff has not put forth any facts suggesting that Nurse Annesser and Nurse Williams were motivated by plaintiff's lawsuit to retaliate. Indeed, plaintiff does not even allege that they were aware of the lawsuit. Instead, he relies solely on chronology, suggesting that because his lawsuit came first, and the purported HSR delays came second, that the former caused the latter.

More fundamentally, plaintiff has not established an adverse action. That is – as already discussed – plaintiff has not shown that the handling of his HSRs was inappropriate. He spends a great deal of time explaining how an HSR is supposed to be handled, but entirely fails to mention the substance or contents of the HSRs he submitted. Meanwhile, the HSRs that he has attached as exhibits fail to specify any medical condition requiring treatment. To the contrary, healthcare staff repeatedly advised him that he needed to submit an actual complaint. Because plaintiff has not alleged the contents of his HSRs, he has not shown that those HSRs required "triage," or that he was entitled to be taken to the health care unit for further assessment. Thus, he has not established an adverse action, which is a necessary element of a retaliation claim.

The Court notes that plaintiff's own allegations contradict his assertion that Nurse Annesser and Nurse Williams failed to triage his HSRs for a retaliatory purpose. In particular, plaintiff states that when Nurse Annesser and Nurse Williams were off-duty, other unidentified nurses also purportedly failed to triage his HSRs or direct prison guards to bring him to the health care unit. There is no suggestion that these nurses had any retaliatory motive, which implies – as

26

the Court has already discussed – that plaintiff's HSRs did not contain anything warranting triage or evaluation.

For these reasons, plaintiff has failed to state individual capacity claims against Nurse Annesser and Nurse Williams for retaliation.

**iii.     Failure to Protect as to Defendants Leija and Anderson**

Plaintiff alleges that Health Service Administrator Leija and Director of Nursing Anderson failed to protect him from the actions of Nurse Annesser and Nurse Williams. The Court has construed this claim as arising under the Eighth Amendment.

Prison officials violate the Eighth Amendment "when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). "To prevail on a failure-to-protect claim, an inmate must make two showings: (1) an objective component, that there was a substantial risk of harm to the inmate, and (2) a subjective component, that the prison official was deliberately indifferent to that risk." *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021). For a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). *See also Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) ("A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

In this case, plaintiff asserts that defendants Leija and Anderson both failed to protect him from Nurse Annesser and Nurse Williams, because they read his grievance and learned that they "delayed" his HSRs. This fails to state a failure to protect claim for two reasons.

27

First, plaintiff has failed to demonstrate a substantial risk of serious harm. He has generally alleged that he had a hernia that required surgery, and acknowledges both that he received that surgery and follow-up care. Plaintiff has not, however, demonstrated that Nurse Annesser, Nurse Williams, or anyone else was deliberately indifferent. As discussed at length above, he has made no effort to present the contents of his HSRs, and has therefore failed to establish that Annesser and Williams knew of and disregarded a specified medical need. For example, the nine HSRs that plaintiff attached as exhibits all fail to state a medical complaint. Because plaintiff has not shown a substantial risk of harm due to Annesser and Williams, he has failed to establish the first element of a failure to protect claim. In other words, defendants Leija and Anderson cannot be liable for failing to protect plaintiff from Annesser and Williams, if Annesser and Williams have not placed plaintiff at a substantial risk of serious harm.

Second, even assuming a risk of harm, plaintiff has not demonstrated that defendants Leija and Anderson were deliberately indifferent to that risk. The only allegation to that end made by plaintiff is that Leija and Anderson read his grievance. As with the HSRs, plaintiff does not actually allege the contents of his grievance. That is, plaintiff gives no clue as to either what he wrote, or the level of detail that he provided. Thus, it is unknown what Leija and Anderson would have actually learned by reading the grievance, and it cannot be said that they "recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety.

For all of these reasons, plaintiff has failed to state individual capacity claims against defendants Leija and Anderson for failure to protect.

### iv.    Failure to Protect as to Defendants Ratliff and Hill

Plaintiff alleges that defendants Ratliff and Hill "tolerated and/or encouraged retaliatory action and deliberate indifference" by Nurse Annesser and Nurse Williams. The Court has

construed this as a failure to protect claim. As discussed above, "[t]o prevail on a failure-to-protect claim, an inmate must make two showings: (1) an objective component, that there was a substantial risk of harm to the inmate, and (2) a subjective component, that the prison official was deliberately indifferent to that risk." *See Axelson*, 999 F.3d at 546. For a defendant to have acted with deliberate indifference, he or she "must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *See Pagels*, 335 F.3d at 740.

In this case, plaintiff admits that Ratliff and Hill are not supervisors, and therefore lack the authority to correct other nurses. Regardless, he states that they investigated and responded to his grievance, thereby accepting the responsibility to correct any violations. Plaintiff further asserts that Ratliff and Hill acknowledged his complaint about delayed HSRs, but "completely failed to admit or deny it."

As with defendants Leija and Anderson above, plaintiff has failed to demonstrate that he was subjected to a substantial risk of serious harm. His entire complaint is premised on his belief that Nurse Annesser and Nurse Williams failed to properly triage and respond to his HSRs, delaying medical treatment. However, plaintiff has not alleged the contents of his HSRs, and by extension, has failed to demonstrate that his HSRs presented a medical issue that required assessment and treatment by healthcare staff. Moreover, the HSRs that he has attached entirely fail to describe a medical complaint, an issue repeatedly pointed out to him. Because there are no allegations supporting the proposition that Nurse Annesser and Nurse Williams were deliberately indifferent, defendants Ratliff and Hill cannot be liable for failing to protect plaintiff from them.

In addition, plaintiff has failed to describe the contents of his grievance, other than to say it involved his HSRs being "delayed." Without any further allegations as to the grievance's actual substance, or the level of detail it provided, it cannot be said that defendants Ratliff and Hill were

put on notice that intervention was warranted, or that they "recklessly disregarded a known, excessive risk of serious harm to" plaintiff's safety.

For all of these reasons, plaintiff has failed to state individual capacity claims against defendants Ratliff and Hill for failure to protect.

      **v.**      **Civil Conspiracy as to Defendants Leija and Hill**

Plaintiff alleges that Health Service Administrator Leija and Nurse Practitioner Hill conspired to "defeat the due course of justice" and to deny him equal protection of the laws. He specifically cites to 42 U.S.C. § 1985, but the Court has construed this claim as potentially arising under both § 1985 and 42 U.S.C. § 1983.

"To prove a [42 U.S.C.] § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). *See also Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782-83 (8th Cir. 2021). In order to prevail, the plaintiff is required to prove the deprivation of a constitutional right or privilege. *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017). *See also Draper v. City of Festus, Mo.*, 782 F.3d 948, 953 (8th Cir. 2015). "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018).

In order to establish a civil conspiracy under 42 U.S.C. § 1985, a plaintiff must demonstrate "(1) that the defendants conspired, (2) with the intent to deprive him of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that he was injured or deprived of having and exercising any right or privilege of a citizen of the United

States." *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 421 (8th Cir. 2017). The first element requires the plaintiff to "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Johnson v. Perdue*, 862 F.3d 712, 717-18 (8th Cir. 2017). *See also Crutcher-Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012) ("A conspiracy claim requires evidence of specific facts that show a meeting of the minds among conspirators"). Conjecture and speculation is insufficient to prove the existence of a conspiracy. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). Furthermore, unless there is a constitutional violation, there is no actionable conspiracy claim. *Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015).

Here, plaintiff has failed to state a conspiracy claim under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985 for two reasons.

Most fundamentally, plaintiff has not properly alleged a constitutional violation, which is required to sustain a conspiracy under 42 U.S.C. §§ 1983 and 1985. Every claim in his complaint rests on the foundation that Nurse Annesser and Nurse Williams mishandled his HSRs, and that this mishandling – in and of itself – constituted deliberate indifference in violation of the constitution. With regard to this claim in particular, he insists that defendants Leija and Hill conspired to obstruct the grievance process as to his complaints about Nurses Annesser and Hill. The Court has already explained at length that plaintiff has not alleged facts permitting the inference that the handling of his HSRs led to a delay in medical treatment for his hernia. Because plaintiff has not demonstrated that Nurses Annesser and Hill violated his Eighth Amendment rights, there can be no constitutional violation stemming from defendants Leija's and Hill's handling of his grievance about them.

Furthermore, plaintiff has presented no facts whatsoever indicating that Leija and Hill conspired with each other. For instance, there are no facts indicating that the two met, that they spoke about plaintiff, and that they reached an agreement to do something affecting plaintiff. In short, plaintiff has presented an unsupported legal conclusion, which the Court is not required to accept as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

The Court also notes that the thrust of this claim is an interference with the grievance process. As previously noted, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. *See also Jenner*, 828 F.3d at 716-17 (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). To the extent plaintiff is accusing Leija and Hill of impeding the grievance process, this simply does not amount to a constitutional violation, as the process itself is not a liberty interest.

For all of these reasons, plaintiff has failed to state individual capacity claims against defendants Leija and Hill for a civil conspiracy under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.

### vi.   Conspiracy Claim as to Caseworker Davis

Plaintiff has accused Caseworker Davis of acting in concert with others to "mislead [him] to believe that she provided [him] with an official grievance appeal." The Court has again construed the conspiracy claim as potentially arising under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

The claim fails because plaintiff has not alleged any facts showing that Caseworker Davis actually conspired with anyone. That is, there is no indication that Davis met with another person, that they discussed plaintiff in that conversation, and that they then reached an agreement that would result in the violation of plaintiff's constitutional rights. Instead, plaintiff merely concludes that Davis "conspired to deter plaintiff from testifying freely, fully, and truthfully to the matters pending herein." This unsupported legal conclusion, consisting of a label and nothing more, is insufficient to state a claim under either 42 U.S.C. §§ 1983 or 1985. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

The Court further notes that plaintiff has not stated a claim against Caseworker Davis based on his assertion that she misled him into believing that the grievance appeal form she provided was "official." Leaving aside the confusing and conclusory nature of this allegation, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *See Buckley*, 997 F.2d at 495. It follows that any purported failure by Caseworker Davis to comply with the SECC's grievance procedure does not amount to a constitutional violation, even if the Court accepts plaintiff's conclusions as true. *See Lomholt*, 287 F.3d at 684 (agreeing with

district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 5 F.3d 531, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

For all of these reasons, plaintiff has failed to state an individual capacity claim against Caseworker Davis for a civil conspiracy under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.

### vii.   Conspiracy Claim as to Defendant Gammons

Plaintiff has alleged that defendant Gammons "conspired for the purpose of impeding, hindering, obstructing and/or defeating the due course of justice." As with Caseworker Davis above, plaintiff has entirely failed to show that Gammons conspired with anyone to violate his constitutional rights. Specifically, there are no allegations that Gammons met with one or more individuals, that plaintiff was discussed at such a meeting, and that an agreement was reached that would result in the violation of plaintiff's constitutional rights. There is no support for a conspiracy claim, save for plaintiff's conclusion that Gammons "conspired." This conclusion is insufficient to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief").

Aside from a conspiracy, plaintiff has not otherwise shown that defendant Gammons is liable under 42 U.S.C. § 1983. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016).

Here, plaintiff has not established that defendant Gammons violated one of his constitutional rights. The only allegation is that "Gammons unreasonably denied plaintiff's

repeated request[s] to review his medical records," with the intent to hinder him. As in plaintiff's attribution of sinister motives to other defendants in this case, this one is entirely unsupported by any factual allegations. Indeed, plaintiff has attached correspondence from Gammons as an exhibit. This correspondence explains to plaintiff how he can request specified medical records. In any event, there is no support for the contention that plaintiff has a constitutional right to review of his medical records. *See Goodwin v. N.D.C.S. Medical*, 2021 WL 2480164, at *6 (D. Neb. 2021) (explaining that "a prisoner has no constitutional right to review or obtain copies of his prison medical records," and citing cases in support).

For all of these reasons, plaintiff has failed to state an individual capacity claim against defendant Gammons for a civil conspiracy under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, or for denying plaintiff the ability to review his medical records.

   **viii.    Deliberate Indifference Claim Against Nurse Practitioner Hill**

Plaintiff has accused Nurse Practitioner Hill of state law claims of harassment and "intentional infliction of negligence." The Court has construed this as a deliberate indifference claim under the Eighth Amendment.

To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts*, 917 F.3d at 1042. In other words, whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall*, 801 F.3d at 920. Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official actually knew of but disregarded that serious medical need. *See Jackson*, 756 F.3d at 1065.

With regard to the objective prong, a "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784.

As to the subjective prong, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond*, 999 F.3d at 1120. In other words, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*, 847 F.3d at 643. *See also Barton*, 908 F.3d at 1124 (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health").

Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346. However, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson*, 433 F.3d at 646.

Here, the Court has construed plaintiff's complaint as containing two separate deliberate indifference claims against Nurse Practitioner Hill, arising at different times and regarding different medical concerns.

### a. Discontinuance of Ibuprofen

First, plaintiff states that he received hernia surgery on November 3, 2022, and was prescribed ibuprofen for pain. On November 10, 2022, Nurse Practitioner Hill had guards bring plaintiff to the health care unit to assess the progress of his healing. At that time, plaintiff "complained that he was still in pain," but asserts that Hill "discontinued plaintiff's ibuprofen for purpose of retaliation and harassment."

36

This is not sufficient to show that Nurse Practitioner Hill acted with deliberate indifference. There are absolutely no facts demonstrating that Hill discontinued plaintiff's ibuprofen for inappropriate reasons. Instead of facts, plaintiff presents a bare conclusion of malicious intent, which the Court is not required to accept. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (explaining that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts"). Not only does plaintiff fail to support his contention of harassment and retaliation, but he provides no facts suggesting that Hill's actions were not medically sound. Indeed, given what plaintiff has presented, plaintiff has at most established a disagreement over his medical treatment. Such a disagreement does not amount to deliberate indifference. *See Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) ("A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation"); and *Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions…does not rise to the level of a constitutional violation").

The Court also notes that plaintiff's allegation of harassment and retaliation is contradicted by his own facts. Specifically, plaintiff notes that on January 20, 2023, Nurse Practitioner Hill prescribed him "some medication as treatment for acid for his surgery that he received on November 3, 2022. This shows that plaintiff was receiving continuing care following his hernia surgery, and belies his contention that Hill was making medical decisions based on animus, rather than medical judgment.

**b. Failure to Direct Plaintiff to Doctor Sick Call**

Second, plaintiff raises an issue regarding his chronic leg pain. It is unclear to the Court if plaintiff intends this to be a separate claim, as it appears in a section of the complaint titled

"Imminent Danger," and plaintiff acknowledges that the treatment of his chronic leg pain has already been the subject of a separate lawsuit.

In any event, plaintiff asserts that between November 28, 2022 and February 7, 2023, Nurse Practitioner Hill "completely failed to direct prison guards to bring plaintiff to [doctor sick call] for evaluation and treatment concerning his chronic leg pain. By way of background, he states that he suffers chronic leg pain from a "previous gunshot wound." Due to this pain, plaintiff was brought to nurse sick call, and referred to doctor sick call. According to him, his non-emergent referral should have been seen within fourteen days, but seventy-one days elapsed.

This is not sufficient to state a deliberate indifference claim against Nurse Practitioner Hill. As already discussed, violation of a state policy or regulation is not, in and of itself, sufficient to demonstrate a constitutional violation. Instead, plaintiff is required to show that this seventy-one day period before being taken to doctor sick call "for evaluation and treatment" shows that Hill knew of and disregarded a serious medical need. Plaintiff has not done this. For example, plaintiff has not alleged that Hill knew of this referral; he has not alleged that this delay was caused by Hill, or that Hill had the ultimate authority over doctor sick call; he has not alleged that he was not seen at nurse sick call; he has not alleged that he was without proper medication during this period; he has not alleged what evaluation and treatment he required; and he has not otherwise provided any facts indicating that this delay caused him harm. In short, plaintiff has failed to connect the actions of Hill to the violation of his constitutional rights.

For all of these reasons, plaintiff has failed to state an individual capacity claim against Nurse Practitioner Hill for deliberate indifference to plaintiff's medical needs.

### C.  Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. (Docket No. 5). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### D.  Motion for Preliminary Injunction

Plaintiff has also filed a motion for preliminary injunction and temporary restraining order. (Docket No. 2). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

"None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The same standards are applied to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019). He has not carried the burden in this case.

With regard to irreparable harm, plaintiff has failed to provide any facts showing that he is in danger. To the contrary, taken as a whole, plaintiff's allegations show the opposite. He has acknowledged that he received surgery for his hernia, and that he has received post-operative care. Moreover, his allegations concerning deliberate indifference, retaliation, and conspiracies to impede his care are entirely unsupported by facts, as opposed to his own speculation and conclusions.

As to likelihood of success on the merits, the Court has determined that plaintiff's complaint is subject to dismissal. He has failed to state an official capacity claim, as he has not established the liability of either Centurion or the State of Missouri.

Regarding the individual capacity claims, most are premised on the contention that Nurse Annesser and Nurse Williams mishandled his HSRs, which in turn delayed his treatment. However, plaintiff provides absolutely no indication as to the contents of the HSRs, and thus fails to demonstrate that Annesser and Williams did anything wrong. In other words, if plaintiff did not properly request treatment for a serious medical need, Annesser and Williams cannot be accused of denying such treatment. Because he has failed to state a claim against Annesser and Williams for deliberate indifference, he has also failed to state claims of retaliation, failure to protect, or conspiracy. Concerning the deliberate indifference claims directed toward Nurse Practitioner Hill, he has failed to show that the discontinuance of ibuprofen was anything other than a treatment decision. Furthermore, plaintiff's unrelated claim regarding a delay in being seen at doctor sick call does not establish Hill's personal responsibility, or that he was not receiving other treatment or medication.

For all of these reasons, plaintiff's motion for a preliminary injunction and temporary restraining order must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $4.33 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 5) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction and temporary restraining order (Docket No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 2nd day of June, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE